```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                    Case No. 17-20275-Cr-UNGARO

UNITED STATES OF AMERICA,      )
                               )
              Plaintiff,        )
                               )
         -v-                   )
                               )
KEVIN C. FUSCO,                )
                               ) Miami, Florida
              Defendant.        ) October 26, 2017
----------------------------) 11:06 a.m.
```

Pages 1-22

TRANSCRIPT OF SENTENCING PROCEEDINGS

BEFORE THE HONORABLE URSULA UNGARO

U.S. DISTRICT JUDGE

APPEARANCES:

For the Government          FRANCISCO R. MADERAL, JR.
                            Assistant U.S. Attorney
                            99 Northeast 4th Street
                            Miami, Florida  33132-2111

For the Defendant           VANESSA CHEN
                            Assistant Federal Public Defender
                            150 West Flagler Street
                            Miami, Florida  33130

REPORTED BY:                WILLIAM G. ROMANISHIN, RMR, FCRR, CRR
(305) 523-5558              Official Court Reporter
                            400 North Miami Avenue
                            Miami, Florida  33128

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

```
 1                  (Call to order of the Court)

 2            THE COURT:  Good morning.

 3            The case before the Court for sentencing is the

 4  United States versus Kevin Fusco, case number 17-20275.

 5            Who's here for the United States?

 6            MR. MADERAL:  Good morning, Your Honor.  Frank

 7  Maderal on behalf of the United States.

 8            THE COURT:  Good morning.

 9            And who's here from Probation?

10            THE PROBATION OFFICER:  Good morning, Your Honor.

11  Mercedes Sarnoza on behalf of U.S. Probation.

12            THE COURT:  Okay.  You and Mr. Maderal can have a

13  seat.

14            Who's here for Mr. Fusco?

15            MS. CHEN:  Good morning, Your Honor.  Vanessa Chen,

16  Assistant Federal Public Defender, on behalf of Mr. Fusco, who

17  is present in Court today.

18            THE COURT:  Okay.  And have you been over the PSI

19  with your client?

20            MS. CHEN:  Yes, Your Honor.

21            THE COURT:  And do you know of any reason we

22  shouldn't proceed with the sentencing?

23            MS. CHEN:  No, Your Honor.

24            THE COURT:  Okay.  Fine.  You can have a seat.

25            So, according to Probation, the total offense level
```

```
 1    in the case is 23, criminal history category 1, guideline
 2    range 46 to 57 months.
 3            Now, Ms. Chen moved for a variance based on the ratio
 4    in the guidelines as to MDMA being excessive.
 5            But before we get to that I want to ask you some
 6    questions about the underlying circumstances of this case,
 7    Mr. Maderal.  So, when I read this PSI, it looks to me as
 8    though Mr. Fusco was charged with not all of what the
 9    Government knows he was engaged in.  Is that not correct?
10            The PSI reads to me in a way that suggests that he
11    was in business on the dark web conducting numerous
12    transactions, only some of which are what he's being held
13    responsible for.
14            MR. MADERAL:  Basically yes.  And I say "basically,"
15    because we know that he was on Silk Road and we know that he
16    was on a couple other marketplaces.
17            THE COURT:  Right.
18            MR. MADERAL:  But the conspiracy that we charged, the
19    one we had venue for, the one that we had, you know,
20    sufficient evidence for for trial in charging is the Nucleus
21    marketplace conspiracy.
22            THE COURT:  So it was a little hard for me to
23    understand what was being suggested here when there is a
24    reference, for instance, to, I think, more than 5,000
25    mailings.  Is that right?  Is that what it was, mailings?
```

1          MR. MADERAL:  Correct.

2          THE COURT:  But the Government has not attempted to

3    attribute specific amounts of MDMA to those mailings.

4          MR. MADERAL:  Correct.

5          THE COURT:  And does the Government believe that the

6    mailings entailed MDMA?

7          MR. MADERAL:  Circumstantially, I mean, we're

8    assuming they are.  But we don't really have --

9          THE COURT:  So why is this in the PSI at all, then?

10   If we don't know what it was that Mr. Fusco was mailing, then

11   why talk about it?

12         MR. MADERAL:  My understanding is that the PSI -- it

13   wasn't in the proffer.  What ended up in the PSI was basically

14   a fritting of the criminal complaint, and when we put the

15   criminal complaint together, you know, we're trying to build

16   up probable cause.  We didn't necessarily know as much as we

17   knew after the fact.

18         So, for instance, that number is something that's not

19   in the proffer.  But it was in the criminal complaint and, you

20   know, Probation doing their job I think just sort of picked it

21   up from there.

22         THE COURT:  Well, oftentimes Probation gets their

23   facts from the U.S. Attorney's Office, and I suppose in many

24   cases there is no criminal complaint.

25         MR. MADERAL:  Correct.

1    THE COURT:  So there is a different kind of

2  relationship.  But in this case you did not provide the facts

3  to the probation office.  The probation office relied on the

4  criminal complaint?

5    MR. MADERAL:  Yes, I think so.  We had emails back

6  and forth.  Then she saw the proffer and the criminal

7  complaint.  The proffer was certainly designed to be

8  sufficient and complete for sentencing.  And, no, I didn't

9  provide any other facts beyond the complaint or the -- I

10  didn't provide any other facts.

11    THE COURT:  Well, I have to say that now that you've

12  put it in that light, that it seems to me that perhaps some of

13  what's in here should not be in here, because it certainly led

14  me to believe that the Government believed that these 5,263

15  individual mailings and packages from the stamps.com account

16  had some kind of connection with illegality.  But you're

17  telling me you don't know.

18    So why is it there?

19    MR. MADERAL:  Again, my understanding, it's in the

20  PSI because it was in the complaint.  We were trying to just

21  put everything we knew for the purposes of establishing

22  probable cause, which is sort of a different posture than

23  we're at now when, you know, we have narrowed in and focused

24  on the Nucleus conspiracy, and that's what he's pled to and

25  that's what we included in the proffer.

1           And you know, I didn't think that those mailings -- I

2     didn't insist on them being in the proffer because I wasn't

3     going to assign a drug amount to them or, you know, use them

4     for a guideline calculation or argue that they were relevant

5     to the guideline calculations.

6           I actually -- because I did see the objection to --

7     there's a difference between the proffer and what's in the

8     PSI, and I can tell you I have circled those two numbers as

9     essentially the only material difference.

10          THE COURT:  Actually, I don't think I have -- maybe I

11    overlooked it -- but I don't think I have that objection.  I

12    have the memorandum in support of the motion for downward

13    variance, but I don't think I have any objections.

14          But I do think that if there is an objection to

15    what's in the PSI, I might want to take a look at it.

16          MS. CHEN:  Your Honor, I apologize for interjecting.

17          To clarify Mr. Maderal's position, what we sought to

18    do in this case, because the parties had agreed to what was in

19    the factual proffer, to not include those disputed numbers.

20          Typically, what our office does, in order not to

21    clutter this Court's docket with something that doesn't rise

22    to the level of a formal legal objection to the calculations,

23    was I had sent an email directly to Probation requesting that

24    what was contained in the PSI's description of the offense

25    conduct mirror the factual proffer in this case, because that

1  was what the parties had contemplated, agreed to and executed,

2  and that was what the parties thought would provide a

3  sufficient basis not only for the plea but for sentencing.  So

4  that was something that we sought to address with Probation.

5        I believe that Probation filed an addendum recently

6  to the PSI stating that it had received our request to mirror

7  the factual proffer but wanted the Court to see, I suppose,

8  what was in the criminal complaint.

9        THE COURT:  Okay.  Well, could we just look at this

10 for a second?  Maybe it makes no difference.  But, you know,

11 in fairness to Mr. Fusco, I just want you to know that when I

12 read this, I drew certain conclusions that I think now that

13 I've heard what Mr. Maderal has to say are unwarranted.

14        So, if we were to try to correct this situation, what

15 would we do?  Would we take out paragraph 29, perhaps?

16 Perhaps that would solve the problem.

17        MR. MADERAL:  Your Honor, paragraph 29 is verbatim to

18 paragraph 9 of the proffer.  The proffer simply didn't have

19 those two figures because of this issue.

20        Again, I think Probation, in just doing a thorough

21 job, picked up the more detailed facts of the complaint.

22        THE COURT:  Well, I don't have the criminal complaint

23 here.

24        So how would we change paragraph 29 to address this

25 problem?

1          MR. MADERAL:  You could strike -- I don't think

2    paragraph 29 changes the guidelines one way or the other.

3    Just for the sake of ease, we could simply strike paragraph 29

4    rather than strike out the figures.

5          THE COURT:  Well, it doesn't work to strike out the

6    figures from a grammatical standpoint or from any other kind

7    of other standpoint.  So that's not a solution.

8          Do we take out the first sentence?  Do we take out

9    the first paragraph?  What do we do, Mr. Maderal?

10         MR. MADERAL:  Right.  That's why I suggested take out

11   paragraph 29 because it doesn't work out if you take the

12   figures out.

13         THE COURT:  Does it work to take out paragraph 29?

14   Maybe we should look at paragraph 27 and 28 and 30 just to

15   make sure it makes sense.

16         MR. MADERAL:  Okay.

17         THE COURT:  Okay.  Why don't you.

18         MR. MADERAL:  I believe it does, Your Honor.

19         THE COURT:  Okay.  Do you agree, Ms. Chen?

20         MS. CHEN:  Yes, Your Honor, I do agree.

21         THE COURT:  Okay.  Let's just take out paragraph 29,

22   please.  Okay.  Fine.

23         Now, this motion for variance is very interesting,

24   Ms. Chen.  But it's really a backdoor to challenging what was

25   agreed to in the plea agreement.  I'll hear you on it.  But I

1   think you're really pushing it and pushing your interpretation

2   of the plea agreement.

3           But, frankly, from what I can tell from what my staff

4   has told me of their conversations with you, I'm not sure you

5   saw that in the plea agreement you had agreed to the

6   conversion.  I know you weren't Mr. Fusco's attorney at the

7   time he entered the plea.

8           You can have a seat, Mr. Maderal.

9           Go ahead.

10          MS. CHEN:  Thank you, Your Honor.  I will not belabor

11  the point in the sentencing memorandum.  But I did want to

12  clarify one issue with the Court.

13          Even though I was not Mr. Fusco's attorney at the

14  time that he entered into the plea agreement, it was the

15  understanding of my colleague and, I believe, Mr. Maderal as

16  well, when they entered into the plea agreement, that they

17  agreed that the guideline calculation based on the 500-to-1

18  ratio is correct.  It's correct according to the guideline

19  manual.  That's why we agreed to it in the plea agreement.

20          But, Your Honor, I think this lack of clarity is my

21  fault.  I should have been more clear in saying we're not

22  seeking to repudiate the plea agreement.  But this is more

23  akin to one of those crack cocaine cases, where even though

24  it's calculated correctly under the guidelines and we agree

25  that the certain guidelines apply, as a policy reason, under

```
 1    the 3553(a) factors in Kimbrough, we believe that there exists
 2    a basis for the Court to vary downward.
 3              My understanding -- and again, I can let Mr. Maderal
 4    speak on this -- is that the parties did contemplate that a
 5    variance would be filed, a motion for a variance and --
 6              THE COURT:  On this basis?  On this basis?  You
 7    contemplated filing a motion for variance on this basis at the
 8    time the plea agreement was signed; because I find that a
 9    little hard to understand when the plea agreement says the
10    office and the defendant agree that the agreed quantity of
11    drugs involved in the offense is 492 grams of MDMA, which is
12    equivalent to 246 kilograms of marijuana.
13              So I'm really have a little difficulty with this,
14    Ms. Chen.  I'm sure you can understand why.
15              MS. CHEN:  I do, Your Honor.
16              And to the Court's point, I don't think that the
17    agreement or the understanding that my colleague had is quite
18    that explicit, that it would be about the ratio, but just in
19    terms of a general variance motion.  So I can make that
20    representation to the Court.
21              THE COURT:  Okay.  That's fascinating.
22              Okay.  What do you want to say to that, Mr. Maderal?
23              MR. MADERAL:  In terms of the prior understanding or
24    just responding?
25              THE COURT:  Yeah, the prior understanding.
```

1      MR. MADERAL:  I mean, the plea agreement is silent on

2  variance, which means they can move for one, and I assumed

3  they would and that was the understanding.

4      THE COURT:  And did you assume they would move for a

5  variance on the drug quantity?

6      MR. MADERAL:  No.

7      THE COURT:  No.  Right.

8      MR. MADERAL:  I didn't assume they wouldn't.  I just

9  didn't think --

10     THE COURT:  Okay.  That's fine.

11     Well, since Mr. Maderal has no objection to your

12  making the argument, apparently, go ahead.  I read what you

13  filed.

14     MS. CHEN:  And I don't seek to take up too much of

15  the Court's time because I know the Court has reviewed the

16  submission.

17     We would just respectfully request that if the Court

18  were not inclined to vary downward as --

19     THE COURT:  You're not asking for much, as I recall,

20  right?  It brings it down, what, by two points, something like

21  that?

22     MS. CHEN:  Yes, Your Honor.

23     And we would just respectfully request, due to the

24  issues raised in the PSI about Mr. Fusco's upbringing, the

25  physical and verbal abuse that he and his family suffered, as

1  well as his substance abuse issues, I think the letters

2  demonstrate that the individual that he was at age 17, who

3  engaged in that sort of conduct, that sort of behavior with

4  his family, is very different from the person that he's grown

5  into being right now 12 years later.

6      I think that the letters speak to the real change

7  that he has effectuated in his life in terms of his education,

8  his desire to be a gentle and caring person with his family of

9  choice, mostly his girlfriend's family and the family of

10 neighbors and colleagues he has in New York.  He has tried, to

11 his credit, to repair and reestablish bonds with his estranged

12 mother and stepfather to repair those wounds.

13     Mr. Fusco has prepared a statement.  I would

14 respectfully request that the Court take his nature and

15 characteristics into account in setting a sentence that is

16 sufficient but not greater than necessary in this case.

17     I think it is also noteworthy that this morning, when

18 Mr. Fusco came in, he presented a thumb drive of additional

19 information that might be helpful to the Government in another

20 investigation that they have.

21     I am not asking for 5K credit.  But I just would like

22 the Court to know that I think that's an important aspect of

23 his acceptance of responsibility, and I think that that shows

24 his willingness to help him put this behind him.

25     THE COURT:  So what are you advocating for in the way

 1    of a sentence?

 2          MS. CHEN:  Your Honor, if the Court were not inclined

 3    to apply the lower ratio, we would be advocating for a slight

 4    variance beneath the low end to take into account his family

 5    characteristics, his substance abuse, and the measures he's

 6    undertaken to try to put this behind him.

 7          THE COURT:  Okay.  Before I hear from Mr. Fusco, what

 8    do you want to say, Mr. Maderal?

 9          MR. MADERAL:  Your Honor, we are advocating for the

10    low end of the guidelines, 46 months.

11          I do recognize, looking at the PSI, Mr. Fusco does

12    seem to be somebody who, you know, has been in school, trying

13    to work.  Other than -- I won't call this an aberration

14    because it's not a one-time thing.  It's a pretty

15    long-standing and ongoing.  Other than this side, a

16    significant side of his conduct, he seems to have a lot of

17    promise and quality and some very redeemable character and,

18    hopefully, he will go on after this to do better things.  So

19    I'm mindful of that.

20          I am mindful, not that I agree with the motion -- I

21    don't.  But, of course, MDMA is different from fentanyl.  We

22    have dark web vendors right now, and one is being sentenced in

23    front of Judge Altonaga in a few weeks for fentanyl or

24    OxyContin that is masked as fentanyl.  So I do recognize a

25    difference.  I think that's already accounted for in the

 1    guidelines, notwithstanding Ms. Chen's argument.

 2              But why I think the argument should not be granted is

 3    deterrence is important here.  He was part of this dark web

 4    community where it is open and obvious that people are selling

 5    fentanyl, people are selling opioids.

 6              That is the broader conspiracy.  That's not what he

 7    was doing.  He was solely selling MDMA.  But he is a part of

 8    that and his sales fund that.

 9              THE COURT:  In other words, he took advantage of the

10    fact that the dark web existed.

11              MR. MADERAL:  Correct.

12              THE COURT:  And had his own business.

13              MR. MADERAL:  Correct.  And we are working very hard,

14    because it is very hard to police, identify and capture these

15    dark web vendors, not Mr. Fusco, but people on the same

16    website open and obvious to him are selling fentanyl to high

17    school children.  So deterrence is important.  It is important

18    that when you are part of the dark web, you be punished for it

19    to deter others.

20              THE COURT:  I don't know anything about the dark web.

21    But when one is on the dark web, one isn't doing anything to

22    keep the dark web going, is one?  One's not contributing

23    financially to the continued existence of the dark web.  One

24    is not contributing to what other people on the dark web are

25    doing.  Everybody is exacting independently.  No?

1      MR. MADERAL:  Correct.  But as much as if you sell

2  something on eBay, you're contributing to eBay because your

3  business funds eBay.  EBay exists because people go there and

4  are part of the community and commissions are charged for

5  every one of Mr. Fusco's sales.  That went to the dark web

6  website Nucleus in this case.  That kept it operating.

7      THE COURT:  So how much was it?  How much do you have

8  to pay Nucleus to do your drug business on the dark web?

9      MR. MADERAL:  They charge -- so they work as an

10  escrow.  It's almost exactly like eBay and PayPal, and if you

11  go there, he has, you know, a vendor page, a profile, rating,

12  star ratings, reviews, an image of product.  It's kind of

13  absurd really.

14      They take a percentage.  So when the purchaser buys

15  Mr. Fusco's product, the bitcoin or whatever cryptocurrency

16  they're using goes into escrow with Nucleus.  When it is

17  delivered, Nucleus scrambles it -- that's the basis of the

18  money laundering -- gives it to Mr. Fusco and retains a

19  percentage.

20      I am not sure what that percentage is.  It's

21  relative, you know, probably a dollar or something like that.

22  But they keep their fee and that's how they make money, and

23  that's how the website persists.

24      And you know, when he logs on, you see categories on

25  the left, opioids, hallucinogenics, marijuana, whatever,

1   fraud.  So you know what other people are doing.  It's not

2   like you're operating with blinders in a vacuum when you're

3   selling what you're doing.

4           THE COURT:  So it sounds like it's very cynical to be

5   doing this.  Right?

6           Okay.  So what does Mr. Fusco want to say, Ms. Chen?

7           It's okay if you want to sit down because the

8   microphone is very short.  So have a seat.  That's okay.  Go

9   ahead and just speak into the microphone.

10          THE DEFENDANT:  I want to start off first by

11  expressing how sorry I am to you and to the Government, my

12  loved ones, and all those that I've affected by my actions.  I

13  know that my reason for why I got into this mess is no excuse

14  for what I have done.  But I hope that by hearing what led me

15  down this path you might see who I am.

16          Years ago, I became very intrigued by these hidden

17  marketplace websites showcasing different types of drugs.  I

18  started doing research about what their effects were.  That

19  led me to start experimenting with different drugs from these

20  websites.

21          As my interest in learning about drugs grew, I

22  developed a fascination for MDMA after reading about

23  situations where it was used in therapeutic settings to help

24  people with PTSD as well as a tool for couples therapy.  I

25  became less interested in being a law-abiding citizen and more

interested in sharing MDMA with people who were also visiting these types of websites.

I found out a great deal of emotional pain in my adolescent years was brought into a new perspective as a result of using the drug.  I revisited certain painful memories -- my dad abandoning my mom; my relationship with my mom which left years of sadness -- and could better understand those painful memories with acceptance and, to a certain extent, forgiveness.

I know it was stupid and wrong, but I was determined to help others experience the healing I felt with MDMA.  I foolishly ignored and violated drug trafficking laws in doing so, and this is something I'm truly sorry for.

I am now more conscious of the fact that behind the anonymity of the Internet and the bitcoin payment system there was no true way to verify who I shared this MDMA with and what their intentions were.  While I wanted to think that people would educate themselves about the drug and use it responsibly, there was no true way to verify that they would, nor was there any true way to verify the age of those seeking it.

In regards to the marketplace websites themselves, there is no way to tell who is behind the creation of them. Buyers and sellers on these markets could be patronizing cartels or otherwise destructive people for all we know.  Not

1  everybody's intentions are good.  I am so sorry that I did not

2  consider these factors at the time of my actions.  It was

3  stupid and wrong.  I am sorry.

4          Although this has been a difficult time for me, I

5  have tried to use my mistakes to improve and grow as a person.

6  I now face my difficulties regarding family with patience and

7  sobriety.  I have worked to improve relationships with the

8  important people I do have in my life to make amends for my

9  wrongs and, most importantly, to focus on living a whole and

10  productive life.

11          As I have been on bond during these past several

12  months, I have worked on myself, made progress towards

13  completing my degree, and have just found great joy in

14  avoiding these websites and drugs altogether.  I feel free and

15  clear of much of the baggage that has weighed me down and kept

16  me from moving forward.

17          With the sentence that I face today I will continue

18  to head down this better path and leave these years even

19  further behind me.

20          THE COURT:  Okay.  Thanks, Mr. Fusco.

21          So this is what I think.  I think that I don't need

22  to resolve the issue of what should be the proper conversion

23  ratio for MDMA.  I need only say that the current ratio does

24  not seem to be based on good science.  And I think that are

25  other mitigating factors here in Mr. Fusco's background which

1   support a small variance.  So I am going to vary downward to

2   36 months.

3           So, if you'll stand, Mr. Fusco, the Court is going to

4   impose sentence.

5           The Court has considered the statements of the

6   parties, the presentence report containing the advisory

7   guidelines and the statutory factors.  The Court finds, for

8   the reasons stated and after consideration of all of the

9   factors, that the sentence which is sufficient but not greater

10  than necessary in this case is 36 months.

11          It is the finding of the Court that the defendant is

12  not able to pay a fine.

13          It is the judgment of the Court that the defendant,

14  Kevin C. Fusco, is committed to the Bureau of Prisons to be

15  imprisoned for concurrent terms of 36 months as to each of

16  Counts 1 and 2 of the indictment.

17          Upon release from imprisonment the defendant shall be

18  placed on supervised release for concurrent terms of three

19  years as to each of Counts 1 and 2.  Within 72 hours of

20  release the defendant shall report in person to the probation

21  office in the district where released.

22          While on supervised release the defendant shall

23  comply with the mandatory and standard conditions of

24  supervised release, which include not committing any crimes;

25  being prohibited from possessing a firearm or other dangerous

1    device; not unlawfully possessing a controlled substance and

2    cooperating in the collection of DNA.

3           The defendant shall also comply with the following

4    special conditions:  Financial disclosure; permissible search;

5    substance abuse treatment; and payment of any unpaid

6    restitution, fines or special assessments as stated in Part G

7    of the presentence report.

8           It is further ordered that the defendant shall

9    immediately pay to the United States an assessment of $100 as

10   to each count of conviction, for a total of $200.

11          So the total sentence is 36 months' imprisonment,

12   three years' supervised release, and a $200 assessment.

13          Forfeiture of the defendant's right, title and

14   interest in certain property is hereby ordered consistent with

15   the plea agreement.

16          I don't think I had a forfeiture order.

17          MR. MADERAL:  I think there's a proposed order on the

18   docket that was filed.

19          THE COURT:  You do?

20          I don't see it here in the file.  Kathryn will have

21   to pull it.

22          And now that sentence has been imposed, does the

23   defendant or his counsel object to the Court's findings of

24   fact or to the manner in which sentence was pronounced?

25          MS. CHEN:  No, Your Honor.

1    THE COURT:  Okay.  So, Mr. Fusco, you may have some

2  rights to take an appeal from this sentence.  If you want to

3  take an appeal, the notice of appeal has to be filed within 14

4  days of entry of the judgment of conviction.

5    Also, if you wish to take an appeal and you cannot

6  afford a lawyer to represent you on appeal or cannot afford

7  the costs of the appeal, the Court will waive the costs and

8  appoint a lawyer upon the filing of a proper motion.

9    Now, is Mr. Fusco going to be allowed to voluntarily

10  surrender?

11    MS. CHEN:  Yes, Your Honor.  I think he wants to

12  finish the current semester of college.

13    THE COURT:  So when would that be?

14    MS. CHEN:  Your Honor, the semester ends December

15  19th.  So we would respectfully request a surrender date of

16  December 20th.

17    THE COURT:  Okay.  So, fine.  You can surrender

18  December 20th either to the United States Marshal's Service

19  office here or to the institution to which you are

20  designated.  You have to surrender by 2:00 p.m. on that date.

21    If you fail to surrender on that date and by that

22  time, that's a separate federal offense for which you could be

23  separately prosecuted and consecutively sentenced.

24    Also, between now and then you have to comply with

25  all of the terms and conditions of your pretrial release.  If

1   you fail to do so, you could be incarcerated earlier without

2   notice.

3           Is there anything else, Ms. Chen?  Do you want some

4   recommendations?

5           MS. CHEN:  Yes, please, Your Honor.

6           We would respectfully request that the Court consider

7   a recommendation for his participation in the residential drug

8   abuse program.

9           THE COURT:  Any objection, Mr. Maderal?

10          MR. MADERAL:  No, Your Honor.

11          THE COURT:  So recommended.

12          MS. CHEN:  And we would also respectfully request a

13  recommendation to designation in a facility in South Florida.

14  His girlfriend's family is in Atlanta, Georgia, and that would

15  be most convenient for them.

16          THE COURT:  So recommended.

17          All right.  Thank you very much.

18          MS. CHEN:  Thank you.

19          MR. MADERAL:  Thank you, Your Honor.

20      *     *     *     *     *     *     *     *     *     *

21                  C E R T I F I C A T E

22

23      I certify that the foregoing is a correct transcript

24  from the record of proceedings in the above-entitled matter.

25